IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

LORAINE JACKSON,           §
                           §
        Plaintiff,         §
                           §
v.                         §     CIVIL ACTION NO. H-07-2322
                           §
THE KROGER CO.,            §
                           §
        Defendant.         §

MEMORANDUM AND ORDER

Pending is Defendant Kroger's Motion for Summary Judgment (Document No. 16).  After carefully considering the motion, response, and applicable law, the Court concludes that the motion should be granted.[1]

I.  Background

This is an employment dispute.  Loraine Jackson ("Plaintiff") worked at an Albertson's grocery store located in Houston, Texas, from October 1995 until May 2002.[2]  In May 2002, the store was acquired by The Kroger Company ("Kroger").[3]  On May 9, 2002,

---

[1] Also pending is Defendant Kroger's Motion to Strike Plaintiff Loraine Jackson's Response to the Motion for Summary Judgment (Document No. 19), because it was late-filed.  The Response was received, however, before the Court reached the motion and in this instance, the Response has been considered and the Motion to Strike is therefore DENIED.

[2] Document No. 17 at 3.

[3] Id.

Plaintiff formally applied to Kroger, and was hired to manage the floral department on May 14, 2002.[4]   During this ownership transition, Plaintiff attended Kroger's "New Team Member Orientation," where she received a copy of Kroger's employment policies, including Kroger's policy concerning harassment.[5]   That policy defines, prohibits, and specifies ways to report harassment.[6]   Plaintiff worked under four separate store managers during her employment by Kroger, including, most recently, Tim Tovey ("Tovey").   Plaintiff's claims arise from four interactions with Tovey.

In September 2006, Tovey and co-manager Steve Brown called Plaintiff into Tovey's office to discuss the unacceptable gross profit margin from Plaintiff's department.[7]   Plaintiff recounts the conversation as follows:

> A:   He called me into the office, and Mr. Steve Brown was in the office at the time.  Mr. Tovey was sitting, and Mr. Brown was standing.  And when I came in the door, I was standing, also.  So, he-he told me that my gross was pretty low that quarter.  I said, [y]es, sir, I was aware of that, and we were working on fixing it.  I can't remember exactly what else was said on my part.  And then he said, Loraine, I don't know what I'm going to do with you.  And he rolled up this piece of paper on his desk

---

[4] Document No. 16, ex. A at Def. App. 003, ex. H.

[5] <u>Id.</u>, ex. A at Def. App. 022, ex. F.

[6] <u>Id.</u>, ex. C at Def. App. 031-033.

[7] <u>Id.</u>, ex. A at Def. App. 007.

and he told me to turn around as if he was going to hit
me on my butt.

Q:   He rolled up a piece of paper?

A:   He rolled up a piece of paper.

. . .

A:   He had papers here, and he did this [indicating
     that he rolled up a piece of paper] and he told me
     to turn around.

Q:   And what happened when you turned around?

A:   I didn't

. . .

Q:   What did you say to him when he told you to turn
     around, that he was going to spank you?

A:   I said, [t]hat's not right, that's not what I came in
     here for, and if you're finished, I have work to do.

Q:   Okay.  Did he touch you at all[?]

A:   No, he did not.

. . .

Q:   What did Mr. Brown say in the meeting?

A:   He just looked.  He didn't say.[8]


    The next month Plaintiff was again called into Tovey's office,

this time to discuss her tardiness and a rumor Tovey allegedly

heard from another employee.[9]  Co-manager Starks attended this

_____

    [8] Id., ex. A at Def. App. 007.

    [9] Id., ex. A at Def. App. 006.

3

meeting.[10]  Tovey told Plaintiff "that someone in the store had told him that [she] was an alcoholic."[11]  When asked, Tovey would not say who told him.   Mr. Starks told Plaintiff that she could count on them to help her if she had a problem.[12]  Plaintiff adamantly denied that she was an alcoholic, saying that she never drank.[13]   A few days after this meeting, Plaintiff claims that Tovey approached her and then "sniffed [her] whole body . . . to see if [he could] smell alcohol."[14]  Plaintiff called Tovey an "idiot" and told him to "stay out of [her] face."[15]  Plaintiff says that Tovey never touched her; rather, "[h]e just ran off like--in my mind he just ran off like a little leprechaun and he was just--he had this smirk on his face."[16]

In addition, Plaintiff recounted a conversation between Tovey and two female African-American employees during one Friday meeting (the record does not reflect the month or approximate date) attended by her and several employees.   The two women allegedly

---

[10]  Id.

[11]  Id.

[12]  Id.

[13]  Id.

[14]  Id., ex. A at Def. App. 012.

[15]  Id.

[16]  Id.

joked with Tovey by suggestive innuendo about the size of his penis.[17]

Plaintiff worked her last day at Kroger on November 7, 2006. She submitted a "Request for Leave of Absence" from November 7, 2006, until January 22, 2007.[18]  On November 11th, Plaintiff filed a grievance with the United Food & Commercial Workers Local 455 Union ("Union").  The grievance states, "Nature of the Grievance: unjust harassment/discrimination."[19]  Plaintiff did not report the alleged harassment or discrimination to anyone at Kroger but believed that the Union would take up her grievance for her.[20]

Kroger now moves for summary judgment on all of Plaintiff's claims.  Each claim is discussed in turn.

## II.  Discussion

A.  Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[17] Id., ex. A at Def. App. 020.

[18] Id., ex. I.

[19] Id., ex. K.

[20] Id., ex. A at 165-66, 170-73, 182-84.

and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the

factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

To withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552.  If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and summary judgment must be granted.  Id.

B.  Analysis

1.  Race and Color Discrimination

Kroger argues that Plaintiff failed to exhaust her administrative remedies with respect to her Title VII claim of race and color discrimination because the Charge of Discrimination ("Charge") she filed with the Equal Employment Opportunities Commission ("EEOC") contains no allegation of race or color discrimination. See Document No. 17 at 8-10.  Courts have no jurisdiction to consider Title VII claims if the plaintiff has not

7

exhausted administrative remedies by filing a timely charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *see also* <u>Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 711 (5th Cir. 1994).  The exhaustion requirement has two primary purposes. First, to allow the EEOC, "in its investigatory and conciliatory role, fully to investigate and attempt to resolve claims of discrimination." <u>Clayton v. Rumsfeld</u>, 106 F. App'x 268, 271 (5th Cir. 2004) (per curiam) (citing <u>Nicol v. Imagematrix, Inc.</u>, 767 F. Supp. 744, 752 (E.D. Va. 1991)).  Second, the requirement "put[s] employers on notice of the 'existence and nature of the charges against them.'" <u>Manning v. Chevron Chem. Co.</u>, 332 F.3d 874, 879 (5th Cir. 2003) (quoting <u>EEOC v. Shell Oil Co.</u>, 104 S. Ct. 1621, 1635 (1984)).

In her Charge, Plaintiff identified the alleged discrimination by checking only the "sex" and "age" boxes. *See* Document No. 16 ex. B.  The boxes labeled "race" and "color" were not marked. *See* <u>id.</u>  Nonetheless, "the crucial element of a charge of discrimination is the factual statement contained therein.'" <u>Sanchez v. Standard Brands, Inc.</u>, 431 F.2d 455, 462 (5th Cir. 1970).  Therefore, a plaintiff may assert a Title VII cause of action based on a type discrimination not explicitly listed on the charge if that discrimination is "like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial

charges of discrimination." Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993) (quoting Fellows v. Universal Rest., Inc., 701 F.2d 447, 451 (5th Cir. 1983)); *see also* Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, 40 F.3d at 711; Ray v. Freeman, 626 F.2d 439, 443 (5th Cir. 1980).

Plaintiff set out the following particulars in her Charge:

I.   From on or about September, 2006[,] through on or about November 8, 2006, I was subjected to numerous inappropriate comments from Tim [Tovey], Manager. Mr. [Tovey] also wrongfully accused me of being an alcoholic.

II.  No reason was given for the harassment I incurred.

III. I believe that I have been discriminated against because of my gender, [f]emale, in violation of Title VII of the Civil Rights Act of 1964, as amended.

IV.  I believe that I have been discriminated against because of my age, DOB December 17, 1952, in violation of the Age Discrimination in Employment act of 1967, as amended.

Document No. 16 ex. B.   Conspicuously absent from Plaintiff's Charge is any claim or reference to race or color discrimination. Because race and color are never mentioned or alluded to in Plaintiff's Charge, and because Plaintiff's claim declares that Tovey was motivated by age and gender discrimination, one could not reasonably have expected the EEOC to have investigated race or color discrimination. *See* Thomas v. Tex. Dept. of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000) (holding that the

9

plaintiff's race discrimination claim had not been exhausted by plaintiff's administrative charge of sex discrimination); <u>Young v. City of Houston</u>, 906 F.2d 177, 179 (5th Cir. 1990); <u>Barrera v. Tri-County Juvenile Probation</u>, No. CC-07-201, 2008 WL 416239, at *2 (S.D. Tex. Feb. 8, 2008) (Head, J.) (holding race discrimination claim was not like or related to administrative charges for age discrimination); <u>Craven v. Gonzalez</u>, No. Civ.A. 4:05-CV-00709, 2006 WL 133477, at *5 (S.D. Tex. Jan. 17, 2006).   Because Plaintiff failed to exhaust administrative remedies with respect to her present claims of race and color discrimination, the Court lacks subject matter jurisdiction over those claims.

> 2.   <u>Sexual Harassment</u>

Kroger moves for summary judgment on Plaintiff's sexual harassment claim because (1) the <u>Ellerth/Faragher</u> affirmative defense to vicarious liability shields it from liability for Tovey's comments, and (2) even if the <u>Ellerth/Faragher</u> defense does not apply, Plaintiff cannot establish a claim for sexual harassment.

There are two species of sexual harassment claims under Title VII: (1) *quid pro quo* harassment and (2) harassment creating a hostile work environment.   The first step in evaluating a claim of sexual harassment is to determine whether the *quid pro quo* or hostile work environment standard applies.   *See* <u>Williams v.</u>

<u>Barnhill's Buffet Inc.</u>, 290 F. App'x 759, 761 (5th Cir. 2008) (citing <u>Casiano v. AT&T Corp.</u>, 213 F.3d 278, 283 (5th Cir. 2000)). This determination turns on whether the plaintiff has suffered a "tangible employment action." <u>Casiano</u>, 213 F.3d at 283.  If she has, her suit is classified as a *quid pro quo* case; if she has not, her suit is classified as a hostile environment case.  <u>Id.</u>

A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Burlington Indus. v. Ellerth</u>, 118 S. Ct. 2257, 2268 (1998).  Here, Plaintiff was not fired, passed over for promotion, demoted, or forced to take leave.  Rather, she quit because she claims she was constructively discharged.  A constructive discharge can be considered a tangible employment action. <u>Williams</u>, 290 F. App'x at 762 (citing <u>Aryain v. Wal-Mart Stores Tex. LP</u>, 534 F.3d 473, 480-81 (5th Cir. 2008)).  A constructive discharge claim, however, "requires a greater degree of harassment than that required by a hostile environment claim." <u>Brown v. Kinney Show Corp.</u>, 237 F.3d 556, 566 (5th Cir. 2001).  Thus, if Plaintiff's evidence is insufficient to establish a hostile work environment, it will necessarily be insufficient to establish a constructive discharge. *See* <u>id.</u>; *see also* <u>Vallecillo v. U.S. Dept. of Housing & Urban Dev.</u>, 155 F. App'x 764, 768 (5th Cir. 2005) ("[C]onstructive discharge

claim can be regarded as an aggravated case of hostile work environment.").

A plaintiff who alleges that her supervisor subjected her to a hostile work environment must prove that: (1) she belongs to a protected group, (2) she has been subject to unwelcome sexual harassment, (3) the harassment complained of was based upon sex, and (4) the harassment complained of affected a term, condition or privilege of her employment. Watts v. Kroger Co., 170 F.3d 505, 509 (5th Cir. 1999). In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Butler v. Ysleta Ind. Sch. Dist., 161 F.3d 263, 269 (5th Cir. 1998) (citing Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 371 (1993)). For harassment to be actionable, it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001) (citing Watts, 170 F.3d at 509). This requires showing that the environment is both subjectively and objectively offensive, "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to

be so." <u>Butler</u>, 161 F.3d at 269 (citing <u>Harris</u>, 114 S. Ct. at 370).

Plaintiff's proffered evidence of alleged sexual harassment that created a hostile work environment consists of four incidents: (1) the suggestive conversation in Plaintiff's presence between Tovey and two female co-workers during one Friday meeting which allegedly alluded to the size of Tovey's penis; (2) the meeting where Tovey "rolled up a piece of paper" and acted as if he were going to "spank" Plaintiff; (3) the meeting where Tovey told Plaintiff that someone had told him that Plaintiff was an alcoholic; and (4) an incident where Tovey "sniffed" Plaintiff to see if she smelled like alcohol.

The Fifth Circuit has rejected claims of hostile work environment in cases with facts more offensive than those alleged by Plaintiff.  In <u>Shepherd v. Comptroller of Public Accounts of the State of Texas</u>, the plaintiff based her hostile work environment claim on the following: (1) one occasion her alleged harasser told her, "your elbows are the same color as your nipples"; (2) another occasion he simulated looking under her dress and commented that she had "big thighs"; (3) on two occasions he pointed to his lap and said "here's your seat"; (4) on several occasions he touched her arm and tried to look down her shirt.  168 F.3d 871, 872 (5th Cir. 1999).  The Fifth Circuit found such actions "boorish and offensive," but not severe.  <u>Id.</u> at 874.  Tovey, like the alleged

harasser in Shepherd, never made physical threats. *See* id. Unlike
the alleged harasser in Shepherd, however, Tovey never made sexual
overtures to Plaintiff nor did he explicitly or implicitly contend
that Plaintiff was inferior because she was a female. *See* id. at
874  Moreover, while the alleged harasser in Shepherd touched the
plaintiff's arm on several occasions, there is no allegation that
Tovey ever touched Plaintiff.

        In Hockman v. Westward Communications, LLC, the plaintiff
based her hostile work environment claim on: (1) the alleged
harasser made an offhand remark about another female employee's
body; (2) he once asked her to come to work early so they could be
alone; (3) he once slapped her butt with a newspaper; (4) he once
tried to kiss her; (5) he once spoke to her as she washed her hands
through the open door of the restroom; and (6) on several occasions
he brushed up against her breasts and backside.  407 F.3d 317, 328
(5th Cir. 2004).  The Fifth Circuit found that the alleged
harasser's comments, like those in Shepherd, were boorish but not
severe.  Id.  The "brushings" were infrequent and some were
admittedly accidental.  Id. Furthermore, "[t]he attempted kiss and
bathroom incident were isolated incidents that were not serious."
Id.  Significantly, the court stated that "the newspaper slap
amounts to simple teasing, which will not amount to discriminatory
changes in the terms and conditions of employment."  Id.  Here,

14

unlike the plaintiff in <u>Hockman</u>, Plaintiff was never actually touched with the rolled piece of paper.

In sum, Tovey's rolling up a newspaper as if to "spank" Plaintiff while he and a co-manager discussed with Plaintiff her admittedly low quarterly sales, was an even more benign "tease" than occurred in <u>Hockman</u>; his conversation with her, again in the presence of a co-manager, about a report that she was an alcoholic indicated management's concern about her alleged impairment combined with an offer to help; after "plaintiff's denial of the accusation, Tovey's subsequent "sniffing" of her on one occasion to see if he smelled alcohol was at most a crude manner of investigating the report; and Tovey's off-color banter with two other women in Plaintiff's presence, while offensive and boorish, was an isolated incident and not at all directed at Plaintiff. These several incidents are not so severe or pervasive as to alter the conditions of employment and create an abusive working environment.  The summary judgment evidence is inadequate to raise a genuine issue of material fact on Plaintiff's claim of a hostile work environment due to sexual harassment.

3.  <u>Constructive Discharge</u>

As observed above, a constructive discharge claim "requires a greater degree of harassment than that required by a hostile environment claim." <u>Brown</u>, 237 F.3d at 566.  Because Plaintiff has

no hostile work environment claim, she likewise has no evidence sufficient to raise a genuine issue of material fact on her constructive discharge claim.  *See* <u>Anderson v. Ultraviolet Sys., Inc.</u>, No. H-03-2873, 2005 WL 1840155, at *13 (S.D. Tex. July 29, 2005).

### 4.  <u>Sex Discrimination</u>

Title VII prohibits an employer from making an adverse employment decision that is motivated in part by sex discrimination.  42 U.S.C. § 2000e-2(a)(1); <u>Richardson v. Monitronics Int'l, Inc.</u>, 434 F.3d 327, 333 (5th Cir. 2005).  If there is no direct evidence of discrimination, a plaintiff may prove a case of sex discrimination with circumstantial evidence, using the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  Under the <u>McDonnell Douglas</u> framework, the plaintiff has the burden of establishing a *prima facie* case of discrimination.  <u>Comeaux-Bisor v. YMCA of Greater Houston</u>, 290 F. App'x 722, 725-726 (5th Cir. 2008).  To establish a *prima facie* case, a plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) she was replaced by an individual outside the protected class or that similarly-situated employees outside the protected class were more

favorably treated.  *See* <u>Okoye v. Univ. of Tex. Hous. Health Sci.</u>
<u>Ctr.</u>, 245 F.3d 507, 512-13 (5th Cir. 2001).

Plaintiff's *prima facie* case fails the third prong.  In Title
VII discrimination claims, "[a]dverse employment actions include
only *ultimate employment decisions* such as hiring, granting leave,
discharging, promoting, or compensating."[21]  <u>McCoy v. City of</u>
<u>Shreveport</u>, 492 F.3d 551, 559 (5th Cir. 2007) (emphasis added)
(citation omitted).  Again, Plaintiff was not fired, demoted,
forced to take leave, or passed over for promotion; rather, she
resigned.  Document No. 18 at 6-7.  Under Title VII, a resignation
is actionable as an adverse employment action only where that
resignation amounts to constructive discharge.  <u>Brown v. Kinney</u>
<u>Shoe Corp.</u>, 237 F.3d 556, 566 (5th Cir. 2001); *see also* <u>Keelan v.</u>
<u>Majesco Software, Inc.</u>, 407 F.3d 332, 341-43 (5th Cir. 2005)
(finding that an employee who had resigned (and had not alleged
that any other ultimate employment decisions occurred) did not
suffer constructive discharge and thus failed to show that he
suffered an adverse employment action).  As already observed,
Plaintiff was not constructively discharged.  Because she suffered

---

[21] Recently, the Supreme Court held that an adverse employment
action in retaliation cases is not limited to "ultimate employment
decisions," but rather is any action that "well might have
dissuaded a reasonable worker from making or supporting a charge of
discrimination." <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 126 S.
Ct. 2405, 2415 (2006).  In <u>McCoy</u>, the Fifth Circuit held that the
Supreme Court's decision in <u>Burlington Northern</u> was limited to
*retaliation* claims, and did not affect the standard in the context
on *discrimination* claims.  <u>McCoy</u>, 492 F.3d at 559-60.

no adverse employment action, her claim for sex discrimination is dismissed.  *See* <u>Brown</u>, 237 F.3d at 566.

5.  <u>Slander</u>

Plaintiff asserts that Kroger is liable for slander because Plaintiff's supervisor, Tovey, asked Plaintiff if she was an alcoholic.  Kroger asserts that it is entitled to summary judgment on Plaintiff's slander claim because (1) Plaintiff is unable to prove that the statements were defamatory; (2) Plaintiff is unable to prove that the statements were not privileged, and (3) Plaintiff cannot overcome the privilege by proving that the statements were made with malice.

"To maintain a defamation cause of action, the plaintiff must prove that the defendant: (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." <u>WFAA-TV, Inc. v. McLemore</u>, 978 S.W.2d 568, 571 (Tex. 1998).  However, "[a]ccusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates, have a qualified privilege." <u>ContiCommodity Servs., Inc. v. Ragan</u>, 63 F.3d 438, 442 (5th Cir. 1995) (citing <u>Schauer v. Mem'l Care Sys.</u>, 856 S.W.2d 437, 449 (Tex. App.--Houston [1st Dist.]

1993, no writ)).   The qualified privilege must be pled as an affirmative defense.[22]  *See* <u>id.</u> at 443.  If the employer proves that the privilege applies, the employee may overcome the privilege only by proffering specific evidence proving the employer acted with "actual malice."  *See* <u>id.</u>; <u>Reed v. Chevron Pipe Line Co.</u>, 84 F.3d 432 (5th Cir. 1996).

Plaintiff's slander claim arises from Plaintiff's meeting on October 26, 2006, with two of her supervisors, Tovey and Starks. *See* Document No. 18 at 11.   Tovey, the Store Manager, called Plaintiff into his office to discuss her attendance and a rumor he had heard about her.

> Q:   And he calls you into the office, and then what happened?
>
> A:   He called me into the office, and he said that someone in the store had told him that I was an alcoholic.
>
> Q:   Did they say who that was?
>
> A:   I asked him and he did not.
>
> Q:   Do you have any idea who may have told him that?
>
> A:   No, sir.
>
> . . .
>
> Q:   Was there anybody else in the office with the two of you?

---

[22] Kroger invoked the qualified privilege defense by pleading it as an affirmative defense in its Original Answer.  Document No. 5 at 4.

A:   Yes, sir.

Q:   Who else was in the office?

A:   Mr. Starks

Q:   Is he a co-manager?

A:   Yes, sir.

. . .

Q:   Anything else you can remember being said between you and Mr. Tovey in that particular meeting?

A:   In that particular meeting, I just remember asking him where did that come from.  You know, would he tell me, you know, who said it, because I had no idea; and that wasn't my character.  And I just can't remember at this point anything else that was said.

Document No. 16, ex. A at Def. App. 005-006.  After the meeting, Plaintiff asked co-workers if they had told Tovey that she was an alcoholic, or if they had heard such a rumor.  _Id._, ex. A at Def. App. 006-007.  Everyone she asked said they had not heard, nor spread, the rumor.  _Id._

Plaintiff asserts that Tovey "created an atmosphere where it was incorrectly rumored that [Plaintiff] suffered from alcoholism." Document No. 18 at 5.  Plaintiff refers to excerpts from her deposition testimony, reproduced above, and concludes that she "has submitted summary judgment evidence that clearly demonstrates that Tovey spoke with others about [Plaintiff] being an alcoholic in addition to asking [Plaintiff] in front of other individuals if she was an alcoholic."  Document No. 18 at 11.  There is no summary

judgment evidence to support this contention.  Viewed in the light most favorable to Plaintiff, the uncontroverted evidence shows that Tovey made the statements only to Plaintiff and in the presence of Starks.

Tovey was the Store Manager, and Starks was one of the co-managers.  Document No. 16, ex. A at 27-28.  As Plaintiff's supervisors, they had an interest in any impairment that might affect Plaintiff's job performance or her incidents of tardiness which was a subject of the meeting.  *See* Bozeman v. Watson Wyatt & Co., No. 3:03-CV-309-R, 2003 WL 22938953, at *4 (N.D. Tex. Dec. 4, 2003) (finding that communications between supervisors and co-workers about the plaintiff's job performance fell within the qualified privilege); Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646-47 (Tex. 1995) (finding that all supervisors, managers, and the security guard that heard that the plaintiff had walked out with merchandise without paying for it had an interest or duty to investigate the matter); Austin v. Inet Tech., Inc., 118 S.W.3d 491, 497 (Tex. App.--Dallas 2003, no pet.) (finding supervisor's statements to his own supervisor and human resources personnel that the plaintiff had screamed at him in front of customers were made to persons who had an interest or duty to investigate the plaintiff's work performance).  Thus, because Kroger is entitled to qualified immunity, Plaintiff can avoid

summary judgment only by showing evidence that Tovey's statement was malicious.  *See* ContiCommodity, 63 F.3d at 442.

Actual malice means making a statement either (1) knowing that it is false, or (2) with reckless disregard for whether it is true. Carr v. Brasher, 776 S.W.2d 567, 571 (Tex. 1989). "Reckless disregard" means that the statement is made with "a high degree of awareness of probable falsity." Id.  Evidence showing mere "[n]egligence, lack of investigation, or failure to act as a reasonably prudent person [is] insufficient to show actual malice." Duffy v. Leading Edge Prods., Inc., 44 F.3d 308, 313 (5th Cir. 1995) (citing Shearson Lehman Hutton, Inc. v. Tucker, 806 S.W.2d 914, 924 (Tex. App.--Corpus Christi 1991, writ dismissed w.o.j.)). Rather, to show actual malice, there must be "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." Conti-Commodity, 63 F.3d at 442-43 (quoting Hagler v. Proctor & Gamble Mfg., Co., 884 S.W.2d 771, 771-72 (Tex. 1994)).  Here, Plaintiff failed to proffer evidence that Tovey had any motivation other than a legitimate business purpose when he questioned her about whether she had a drinking problem.  Instead, Plaintiff's "case is premised upon *accusations* of bad faith on [Tovey's] part." Howell v. Operations Mgmt. Intern., Inc., 77 F. App'x 248, 250 (5th Cir. 2003) (emphasis added).  "[T]hat is not enough to withstand a motion for summary judgment." Id.; *see also* ContiCommodity, 63

F.3d at 443 (finding that merely showing that the supervisor made statements regarding the plaintiff's behavior prior to having any concrete or objective indication of any wrongdoing on the plaintiff's part was not sufficient to show malice). Plaintiff has failed to meet her burden to show that Tovey acted with actual malice, and therefore, her defamation claim is dismissed.

### III.   Order

Accordingly, it is

ORDERED that Defendant The Kroger Co.'s Motion for Summary Judgment (Document No. 16) is GRANTED, and Plaintiff's case is DISMISSED on the merits.[23]

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 5th day of March, 2009.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[23] Defendant's Motion to Strike Plaintiff's February 24, 2009 Ex Parte Letter to the Court (Document No. 26) is DENIED AS MOOT, in light of this disposition of the case.